SAGINAW MEDICINE CO. *v.* LEE.

1. GUARANTY—PRINCIPAL AND AGENT—EVIDENCE—ADMISSIBILITY.
   In an action against a principal and his sureties on a contract of guaranty, testimony that the principal represented to the surety, when his signature to the guaranty was procured, that he was merely signing a recommend, and that said representation was uttered in the presence of

226—Mich.—36.

and assented to by two agents of plaintiff, *held*, properly
excluded, in the absence of any evidence that said prin-
cipal or said alleged agents were clothed with any author-
ity by plaintiff with reference to procuring the signatures
of guarantors.

2. SAME—ACCEPTANCE OF NOTE—RELEASE OF GUARANTOR.
   Whether plaintiff accepted a note from the principal
   debtor as full payment of the debt guaranteed by defend-
   ant so as to relieve him from all liability as guarantor,
   *held*, properly presented to the jury.

3. SAME—TRIAL—INSTRUCTIONS.
   Failure of the trial judge to instruct the jury that the
   principal debtor and another surety, against whom default
   judgment was entered, were also relieved by the giving
   of said note, *held*, not prejudicial to defendant.

Error to Saginaw; Snow (Ernest A.), J.    Sub-
mitted January 22, 1924.    (Docket No. 101.)    De-
cided April 10, 1924.

Assumpsit ·by the Saginaw Medicine Company
against Lorenzo W. Lee, principal, and Neil Johnson
and Jacob Stingel, sureties, on a contract of guaranty.
Judgment for plaintiff.    Defendant Johnson brings
error.    Affirmed.

*R. L. Crane*, for appellant.

*Naegely & Pierson*, for appellee.

MOORE, J.    Plaintiff brought this suit against the
defendants to recover the sum of $1,077.81, and in-
terest for goods sold and delivered to Lorenzo W. Lee,
under six written contracts dated as follows:  De-
cember 12, 1914; February 19, 1916; February 23,
1917; March 9, 1918; March 1, 1919; January 5, 1920.

At the bottom of the first contract there is a writing
as follows:

"In consideration of the sum of one dollar to us
severally in hand paid by Saginaw Medicine Company,

the receipt whereof is hereby acknowledged, and the execution of the within agreement, by said company and the sale and delivery by it to the party of the second part, of its medicines, extracts and other articles, we, the undersigned, do hereby jointly and severally guarantee the full and complete payment of said medicines, extracts and other articles, at the time and place, and in the manner in said agreement provided.

"JACOB STINGEL     (Seal).
"NEIL JOHNSON     (Seal)."

Each of the other contracts have a similar undertaking in writing.

The appellant pleaded the general issue and gave notice of special defenses.   These various writings are similar to those which were the subject of controversy in the case of *Saginaw Medicine Co.* v. *Batey,* 179 Mich. 651.   A reading of the opinion in that case will be very helpful in considering the instant case. Mr. Stingel did not appear in this case and his default was taken.   The trial court directed a verdict against him and Mr. Lee, for the full amount of the claim of the plaintiff.   The question of the liability of Mr. Johnson was left to the jury in one particular, which will be mentioned presently.   A verdict was rendered against Mr. Johnson.   From a judgment entered thereon the case is brought into this court by Mr. Johnson alone by writ of error.

Counsel for the appellant says the case is materially different in several important particulars from the case of *Saginaw Medicine Co.* v. *Batey, supra.*   He calls attention to the claim that, when Mr. Johnson signed the first guaranty, Mr. Voorheis and Mr. Ford were present, and that they represented the plaintiff company, and that their knowledge was the knowledge of the company.   One difficulty with this contention is that the record is barren of evidence that these gentlemen were clothed with any authority with reference to procuring the signatures of guarantors.

Another claim may be gathered from a brief quotation from the record:

"*Mr. Crane:* When they gave this man the contract to take to Mr. Johnson to sign, the company made him an agent, and whatever he did for them, I can show your honor, by leading authorities, that this is a fact. The form of that contract, sued upon the promises of the guarantor, and when that contract was placed in the hands of the defendant Lee, authorized him—it is my contention in behalf of Mr. Johnson, that he was the agent of the company.    When they put that contract—

"*The Court:*   Lee was the agent of the company?

"*Mr. Crane:*   Yes.   In presenting the contract, and whatever he said and did with Mr. Johnson would be binding upon the company.    It would be the same as though they had given it to this man Voorheis to give to Johnson.    Whatever they told him to do, that would be binding upon them."

The record does not show any agency conferred by the plaintiff upon Mr. Lee in procuring the signatures of the guarantors.    It is the claim of Mr. Johnson that Mr. Lee said to him "How do you do, Mr. Johnson, would you sign a recommend for me" and that he supposed that was what he was doing when he signed the first guaranty.    The circumstances surrounding the signing of the other guaranties are not shown, but it is claimed that Mr. Johnson supposed he was signing recommends.    The testimony of Mr. Johnson shows that after he signed each of the papers mentioned he was sent and received from the plaintiff a registered letter reading:

"Mr. Neil Johnson,
    "Saginaw, Michigan.

"*Dear Sir:*   We are pleased to advise you we have accepted the contract of Lorenzo W. Lee, which you signed as a guarantor.    The name of Jacob Stingel appears as the second guarantor on this contract."

It is the claim of appellant that, after Mr. Lee quit

buying goods, he left with the manager a note which was received as payment, and that as a result Mr. Johnson was relieved of liability. The manager and the bookkeeper denied that the note was received as payment.

The trial judge said to the jury in different forms in substance as follows: We now quote from his charge:

"In that regard, gentlemen of the jury, it is the claim of the defendant, Mr. Johnson, by way of what we call an affirmative defense, that he has been relieved from the obligation of these contracts, because the Saginaw Medicine Company has accepted a note made and executed by Mr. Lee and turned over to the Saginaw Medicine Company, which operated as a matter of fact, and as a matter of law, in the extinguishment of the original obligation, and the substituting of the new contract in place of the first one, which relieves Mr. Johnson from any obligation under it. And the reason of the claim of this release is that Mr. Lee claims that he took this note over to the plaintiff company, and that the note was accepted by the company in lieu of and instead of the obligation that was due on those contracts, and that it accepted and agreed that it would take it and collect the money that was due him from his sales of commodities, and apply it on this note.

"Now, gentlemen of the jury, you are instructed as a matter of law that the acceptance of this note— now give careful consideration to what I am saying, gentlemen—you are instructed that the acceptance of this note by the plaintiff as a payment of the existing indebtedness against Lee and an extinguishment of the obligation for which this action is brought, would release the sureties on the various contracts between the plaintiff and the defendant Lee."

It is now said that the jury should have been told that Mr. Stingel and Mr. Lee would have also been relieved by the giving of the note. Inasmuch as Mr. Lee is not seeking to review the case in this court, and Mr. Stingel is at default and the jury found the note was not received as payment, it is difficult to see how

Mr. Johnson is prejudiced. If people will sign written agreements without reading them, when they have an opportunity to do so, and if they will ignore letters written by a party who is to act upon the written agreement, stating what the liability. is, then when litigation arises over the agreement, courts are powerless to help those who have so signed.

The judgment is affirmed, with costs to the appellee.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE,. FELLOWS, and WIEST, JJ., concurred.